# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: G.B.

No. 17-0697 (Cabell County 16-JA-240)

## MEMORANDUM DECISION

Petitioner Mother F.T., by counsel Cathy L. Greiner, appeals the Circuit Court of Cabell County's July 7, 2017, order terminating her parental rights to G.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison K. Huson, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights based solely upon her anticipated release date from incarceration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2016, the DHHR filed an abuse and neglect petition against petitioner and the father. The DHHR alleged that it received a referral from the Family Court of Cabell County after the paternal aunt sought guardianship of the child while petitioner was incarcerated. According to later admissions, petitioner was arrested for third offense shoplifting to support her drug habit. Petitioner was initially placed on home incarceration, but was subsequently incarcerated after testing positive for marijuana. Petitioner left the child with the aunt upon her incarceration. However, an investigation revealed that the aunt had a history with Child Protective Services ("CPS"), and, thus, was not an appropriate placement for the child. The DHHR alleged that petitioner had been incarcerated since May of 2016 and that due to her incarceration, she was unable to perform necessary parenting duties. The DHHR further alleged that petitioner neglected the child by actively using drugs, which impaired her parenting skills, and inflicted emotional abuse upon the child by exposing her to repeated instances of domestic violence with the father.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

In November of 2016, the circuit court held an adjudicatory hearing, during which petitioner stipulated to her inability to care for the child due to her incarceration and to having a problem with drugs. The circuit court granted petitioner a six-month post-adjudicatory improvement period.

In March of 2017, the circuit court held a review hearing concerning petitioner's improvement period, which had expired by its own terms. The circuit court heard the testimony of a DHHR worker who testified that petitioner had been unable to comply with the terms of her improvement period. According to the witness, petitioner was not to be released from incarceration until June 24, 2017, nearly four months later, and that due to the time frame of the case, the DHHR could not recommend continuing her improvement period. Petitioner testified that she attempted to comply with her improvement plan by taking classes and that she completed a drug program and parenting classes and attended "NA and AA meetings" while incarcerated. Petitioner also testified that she called her daughter weekly and sent her cards. During her testimony, petitioner requested additional time to comply with the terms of her improvement period. After hearing evidence, the circuit court noted that the case had continued along due to petitioner's representations that there was a possibility that she would be released early. However, as petitioner was not set to be released for another four months, the circuit court found that, even were an extension of the improvement period granted, petitioner would be "completely out of time frame requirements" upon her release from prison. Accordingly, the circuit court terminated petitioner's improvement period and set the case for disposition.

In April of 2017, the circuit court held a dispositional hearing. The circuit court heard the testimony of a DHHR worker who testified that petitioner's family case plan was developed "contingent upon her release from incarceration." Petitioner then testified that her release date would be in June of 2017. Petitioner once again requested additional time to remedy the situation and stated that she had housing and employment in place in anticipation of her release. Petitioner testified that she was a good mother and that, although she had made mistakes, she did not feel that she should be "punished by having [her] daughter taken away . . . ." Petitioner admitted that she had been incarcerated for approximately sixteen months of her nearly three-year-old child's life. Petitioner also admitted that she completed a drug rehabilitation program before violating her home incarceration conditions by smoking marijuana, ultimately leading to her incarceration.

The child's paternal grandmother then testified that she had had placement of the child since July of 2016 and that she would adopt the child in the event that petitioner's parental rights were terminated. The grandmother testified that the child had some developmental issues and that she was to undergo testing for autism and a neurological examination. According to the grandmother, the child received birth-to-three services. The grandmother was informed that, although the child was nearly three years old, she "has the age of – of a fifteen month old." The grandmother further testified that the child got aggravated and had "fits" when talking to petitioner on the phone. After hearing arguments from the parties, the circuit court found that there was no reasonable likelihood that the conditions of abuse and/or neglect could be corrected and that termination was necessary for the child's welfare. Ultimately, the circuit court terminated petitioner's parental rights due to the fact that she had been incarcerated for an extended period of time, the child had been out of petitioner's care for at least half of her life,

and because the child had special needs.[2] It is from this July 7, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights based solely on her anticipated release date from incarceration. Specifically, petitioner argues that the findings made by the circuit court as a basis for terminating her parental rights were entirely disingenuous as the circuit court terminated petitioner's parental rights based on her release date, which was eighty-one days away, yet did not enter the order for over ninety days. We find petitioner's argument to be without merit.

We have previously held that

[w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3. First, despite petitioner's argument to the contrary, the record clearly demonstrates that the circuit court relied upon several factors in addition to her incarceration. The circuit court considered the fact that the child had been out of petitioner's care

---

[2]The parents' parental rights to the child were terminated below. According to the DHHR, the permanency plan for the child is to remain in the home of her paternal grandmother with a goal of adoption in that home.

for nearly sixteen months of the young child's life due to two separate incarcerations. In fact, at the dispositional hearing, petitioner had not seen the child in nearly a year. Further, the circuit court considered that the child had special needs and needed permanency in her life. The grandmother testified that the child was to undergo testing for autism and a neurological evaluation and that the child had "fits" upon speaking to petitioner on the telephone. As such, we find no merit in petitioner's argument that the circuit court terminated her parental rights based solely upon her anticipated release date from prison.

Second, while petitioner is correct that the circuit court considered her release date when terminating her parental rights, her argument that it was disingenuous to subsequently enter the order terminating her rights after she was released from prison is without merit. While the circuit court should have entered the order in a more timely fashion, we are unable to conclude that petitioner was prejudiced by the late entry, as it did not modify or change the conditions that existed at the time of the dispositional hearing.[3] We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). However, while the circuit court filed the dispositional order outside of the time frames set forth in Rule 36(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, we find that this procedural error does not warrant reversal of the order. This is especially true in light of the fact that petitioner was granted post-termination visitation at the discretion of the child's grandmother. More importantly, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W.Va. 149, 160, 578 S.E.2d 343, 354 (2003). As this Court has said on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989). *See also* Syllabus Point 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.'

---

[3]The circuit court entered its dispositional order nearly three months after the dispositional hearing was held in violation of Rule 36(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which states that "[t]he court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing." We have previously held that "[s]uch a delay is unconscionable, unacceptable, and unfair to the children." *In re Erica C.*, 214 W.Va. 375, 589 S.E.2d 517 (2003). This Court has often stressed the necessity for rapid finality in abuse and neglect proceedings. Specifically, we have mandated that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

4

Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302 [47 S.E.2d 221].”). Here, the circuit court found that the need for stability and permanency was in the child's best interest and necessitated termination of petitioner's parental rights. Accordingly, we find that the circuit court did not err in terminating petitioner's parental rights. While petitioner argues that she was attempting to take classes to improve her parenting while incarcerated and only had eighty-one days of her sentence remaining, West Virginia Code §49-4-610(6) sets forth that a circuit court

> may extend any improvement period . . . for a period not to exceed three months when the [circuit] court finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the [DHHR] to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

Thus, the circuit court was correct in determining that granting petitioner an extension of her improvement period would be futile as she was not to be released from prison for nearly three months, the amount of time the circuit court was permitted to extend the improvement period pursuant to West Virginia Code §49-4-610(6). As such, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 89, 479 S.E.2d 589, 600 (1996).

While petitioner argues that she arranged for housing, drug treatment, and employment following her release from prison and prior to the entry of the dispositional order, the circumstances at the time of the dispositional hearing were such that the remainder of her incarceration prohibited her from complying with a family case plan in a timely manner pursuant to the time frames set forth under West Virginia Code § 49-4-610. Further, the circuit court found that the child had special needs and that she required stability and permanency before petitioner was released from prison. As such, the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 7, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker